SOUTH RIVER ELECTRIC MEMBERSHIP CORP. v. CITY OF FAYETTEVILLE

[113 N.C. App. 401 (1994)]

———————————

SOUTH RIVER ELECTRIC MEMBERSHIP CORPORATION AND NORTH CAROLINA ELECTRIC MEMBERSHIP CORPORATION v. THE CITY OF FAYETTEVILLE, PUBLIC WORKS COMMISSION OF THE CITY OF FAYETTEVILLE AND MAIDENFORM, INC.

No. 9212SC1172

(Filed 18 January 1994)

**Energy § 12 (NCI4th)— site within electric membership corporation's assigned territory—provision of service by city public works commission reasonable**

The extension of electric service by defendant city's Public Works Commission, which was not an "electric supplier" within the meaning of N.C.G.S. § 62-110.2(a)(3), to a site the Utilities Commission had assigned to an electric supplier was "within reasonable limitations" as that phrase is used in N.C.G.S. § 160A-312, since an assignee does not have an exclusive right to serve within a territory; since the PWC was not an electric supplier, it was not prohibited from supplying electric service to the site; PWC served five other customers, including three who were industrial, within a mile radius of the site; PWC was ready, willing, and able to provide the required service to the site, while plaintiff electric membership corporation did not have the readiness to serve the site; and extension of service to the site by PWC was reasonable.

Am Jur 2d, Electricity, Gas, and Steam § 19; Public Utilities §§ 16 et seq.

Appeal by plaintiffs from judgment entered 22 July 1992 by Judge Giles R. Clark in Cumberland County Superior Court. Heard in the Court of Appeals 20 October 1993.

Plaintiffs South River Electric Membership Corporation (South River) and North Carolina Electric Membership Corporation (EMC) initiated this action on 13 August 1991, by filing a complaint seeking a temporary restraining order and preliminary and permanent injunctions to restrain and enjoin defendant Public Works Commission of the City of Fayetteville (PWC) from further constructing, upgrading, or connecting an electric distribution system outside the city limits of Fayetteville and to restrain defendant Maidenform, Inc. (Maidenform) from accepting electric service from PWC for its distribution facility. On the basis of the verified complaint, the trial court entered a temporary restraining order on 13 August 1991, but later denied plaintiffs' request for a preliminary injunction. Following trial without a jury on 6 and 7 July 1992, the court entered judgment on 22 July 1992, denying plaintiffs' claim for an injunction prohibiting PWC from providing Maidenform with electric power. Plaintiffs appeal from this judgment.

*Robert H. Jones for plaintiff-appellant South River Electric Membership Corporation, and Thomas J. Bolch for plaintiff-appellant North Carolina Electric Membership Corporation.*

*Reid, Lewis, Deese & Nance, by Renny W. Deese and Richard M. Lewis, Jr., for defendant-appellees The City of Fayetteville and Public Works Commission of the City of Fayetteville.*

*R. Joyce Garrett for defendant-appellee Maidenform, Inc.*

McCRODDEN, Judge.

The sole issue on appeal is whether the extension of electric service by PWC, not an "electric supplier," to a site the North Carolina Utilities Commission (Utilities Commission) had assigned to an electric supplier was "within reasonable limitations" as that phrase is utilized in N.C. Gen. Stat. § 160A-312 (Supp. 1993).

The underlying dispute arose as follows. In June 1983, Cumberland County purchased land within its borders for development of a County Industrial Park. In connection with this development, the county requested PWC to coordinate and participate in providing utility and electric services to the Industrial Park. Thereafter, Maidenform purchased a thirty-one acre tract of land

located in the Industrial Park, where it constructed a modern distribution facility to be used for processing and distributing women's intimate apparel. Maidenform requested electric service from PWC which had rates competitive with those of South River. The tract of land is located approximately five miles from the corporate limits of the City of Fayetteville and is wholly within service territory that, on 18 December 1969, the Utilities Commission had, pursuant to N.C. Gen. Stat. § 62-110.2(c)(1) (Supp. 1992), assigned to South River.

Plaintiffs claim that the extension of electric service by PWC was not within reasonable limitations and that consequently South River should be the exclusive provider of service to Maidenform. They have assigned no error to the trial court's findings which are, therefore, presumed to be supported by the evidence and are conclusive. *Insurance Co. v. Trucking Co.*, 256 N.C. 721, 725, 125 S.E.2d 25, 28 (1962).

The trial court found that South River is an electric distribution corporation and an "electric supplier," as defined by N.C.G.S. § 62-110.2(a)(3), and that EMC is a generation and transmission electric corporation. Further findings established that PWC is an agency of the City of Fayetteville and is not an "electric supplier" within the meaning of N.C.G.S. § 62-110.2(a)(3).

An "electric supplier" is defined in N.C.G.S. § 62-110.2(a)(3) as "any public utility furnishing electric service or any electric membership corporation." N.C.G.S. § 62-110.2(b)(8) provides an electric supplier with the *right* to serve all premises located wholly within the service area assigned to it. No other *electric supplier* may serve any premises located in the territory assigned to another electric supplier. *Domestic Electric v. City of Rocky Mount*, 285 N.C. 135, 143, 203 S.E.2d 838, 843 (1974). In the case at hand, since the Utilities Commission had assigned to South River the service territory within which Maidenform's tract is wholly located, no other public utility or electric membership corporation may serve the Maidenform facility. *See id.*

Subsection 110.2(b)(8), however, does not grant an assignee an exclusive right to serve within a territory. *Id.* Since a municipality is not an "electric supplier" as that term is used in section 62-110.2, *Lumbee River Electric Corp. v. City of Fayetteville*, 309 N.C. 726, 735, 309 S.E.2d 209, 215 (1983), its PWC is not prohibited from supplying electric service to the Maidenform facility. *See Domestic Electric*, 285 N.C. at 143, 203 S.E.2d at 843. PWC

*may* serve the Maidenform site, so long as its extension of service is within "reasonable limitations," as provided for in N.C.G.S. § 160A-312.

In interpreting the term "reasonable limitations," the *Domestic Electric* Court stated that the term "does not refer solely to the territorial extent of the venture but embraces all facts and circumstances which affect the reasonableness of the [extension of service]." *Id.* at 144, 203 S.E.2d at 844 (quoting *Service Co. v. Shelby*, 252 N.C. 816, 115 S.E.2d 12 (1960)). In *Lumbee River*, our Supreme Court set out the determinative factors, listed in *Domestic Electric*, used to ascertain whether the extension of service is reasonable. These factors are the electric providers' current levels of service in the area in question, particularly in the immediate vicinity of the potential customer, and the readiness, willingness, and ability of each to serve the potential customer. *Lumbee River*, 309 N.C. at 738, 309 S.E.2d at 217.

Applying these factors to the instant case establishes that PWC's extension of electric service to the Maidenform site was reasonable. South River provides electric power to approximately 98 customers, none of whom is industrial, within a mile radius of Maidenform's facility, and within the same one mile radius PWC provides electric power to five customers, three of whom are industrial. Both South River and PWC are willing and able to provide and maintain adequate three-phase electric power to Maidenform. However, the following unchallenged findings of fact demonstrate that South River does not have the readiness to serve the Maidenform facility. South River does not presently have easements providing access to Maidenform's distribution facility. PWC does. South River cannot presently provide for dual feed electrical power to the Maidenform facility without making modifications to its equipment. PWC can provide the required dual feed electrical power. Furthermore, Maidenform's distribution facility requires three-phase electrical power in order to meet its industrial needs. At the time plaintiffs filed their complaint, PWC's three-phase electric distribution line was approximately eighty feet from Maidenform's distribution facility, while South River's nearest three-phase electric distribution line was approximately 6,400 feet by road and 3,600 feet by direct line from Maidenform.

Plaintiffs argue that public policy requires that the readiness, willingness, and ability of each provider to serve the potential

customer must be considered at the time the electric service is needed, not when the request is made. Although plaintiffs set forth a persuasive argument, they have failed to provide any authority for their position. Thus, we must rely upon our Supreme Court in *Lumbee River*, which considered each provider's present readiness to serve the potential customer. Since PWC demonstrated its present readiness to serve Maidenform, we overrule this challenge.

Based upon its findings of fact, the trial court properly concluded that PWC's extension of service to the Maidenform distribution facility in the Cumberland County Industrial Park was within reasonable limitations. We, therefore, affirm the judgment.

Affirmed.

Judges LEWIS and WYNN concur.